UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

EDWARD J. SMITH and
TONYA G. SMITH,                                             No. 13-11237-ta7

    Debtors.

### MEMORANDUM OPINION

    Before the Court are the Chapter 7 trustee's Motion to Approve Compromise Between Chapter 7 Trustee and Robert Gonzales D/B/A New Mexico Music Factory (the "Settlement Motion") and the trustee's Objection to Debtors' Exemptions (the "Exemption Objection"). The Court held final hearings on the Settlement Motion and Exemption Objection on November 20, 2014, heard the testimony of the debtors, reviewed submitted exhibits, and took the matter under advisement. For the reasons set forth below the Court will grant the Settlement Motion and sustain the Exemption Objection.

### I.    FACTS

    The court finds the following facts:[1]

    Tonya Smith ("Smith") entered into a recording contract with Robert Gonzales on April 12, 2012. Under the contract, Smith agreed to pay Gonzales $4,700 to record, mix, and produce a master compact disc of ten songs sung by Smith. The contract called for delivery of the CD master by August 1, 2012. Smith paid Gonzales $4,700 in April, 2012, recorded a number of

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr.N.D.Ill.2013), *affirmed*, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

songs with him, and waited for Gonzales to provide the finished CD master. Gonzales did not deliver the CD master by the August 1, 2012 deadline. In the spring of 2013, Smith and Gonzales negotiated a new delivery date of June 5, 2013.

Debtors, through counsel, filed this case on April 11, 2013 and attended the § 341[2] meeting on May 13, 2013. The trustee submitted a report of no distribution on May 14, 2013. On July 22, 2013, the Court entered discharge and case closing orders.

Debtors did not list any potential claim against Gonzales, nor any right to a CD master, on Schedule B. The recording contract was not listed on Schedule G. When the trustee asked Debtors at the § 341 meeting if they had any reason to sue anyone, Debtors said no.

Gonzales failed to deliver the completed CD master on June 5, 2013. Smith filed a breach of contract suit against Gonzales on June 7, 2013, about three weeks after the § 341 meeting and six weeks before receiving her discharge. A jury awarded Smith $7,424.25 (the "Judgment") in 2014.[3] Gonzales's attorney thereafter contacted the trustee and told him about the Judgment. Prompted by the information, the United States Trustee's office filed a motion to reopen the bankruptcy case, alleging that Debtors failed to disclose the cause of action against Gonzales. The Court reopened the case on June 3, 2014, and reappointed the trustee.

The trustee pursued the estate's claim against Gonzales,[4] eventually agreeing to accept $4,000 in full settlement. This proposed settlement is the subject of the Settlement Motion.

On July 22, 2014, after the trustee filed the Settlement Motion, Debtors filed an amended Schedule C, asserting inter alia a homestead exemption (N.M.S.A. § 42-10-09) for the equity in

---

[2] All statutory references are to Title 11 of the United States Code unless otherwise stated.
[3] The date the judgment was entered is unclear. The Trustee gives the date as May 9, 2014, while Smith says it was April 2, 2014. The exact date is immaterial.
[4] The trustee did no attempt to enforce the Judgment, likely because it was void or otherwise subject to challenge.

their house and an "in-lieu-of-homestead" exemption (N.M.S.A. § 42-10-10) for the value of the recording contract claim. The trustee responded with the Exemption Objection.

The trustee testified that although the likelihood of success of the estate's claim against Gonzales is high, the cost of litigation and collection would reduce the net recovery below the $4,000 settlement amount. Further, the Trustee testified he would reduce his commission and cut nearly all of his legal fees to ensure proceeds of the settlement go to creditors.

Smith testified that, at the time of the § 341 meeting, she did not think she would have to sue Gonzales because she thought he would deliver the CD master as promised. Smith did not explain why she failed to amend her schedules or tell the trustee about the claim once she had filed suit.

Debtors were represented by counsel during their initial bankruptcy proceedings. Smith said she did all of the paperwork for the bankruptcy filing and gave it to her attorney, who reviewed and filed it. She testified that she spoke to her attorney about the recording contract dispute, and that the attorney told her it "really wasn't important." Smith also testified that she did not discuss suing Gonzales with her attorney.

## II. DISCUSSION

### A. The Settlement Motion.

Federal Rule of Bankruptcy Procedure ("Rule") 9019(a) "allows a court, after notice and a hearing, to approve a compromise or settlement of a claim belonging to the bankruptcy estate, including a debtor's cause of action against a third party." *In re Brutsche*, 500 B.R. 62, 70 (Bankr. D.N.M 2013). "Compromises are favored in bankruptcy." 9 Collier on Bankruptcy & 9019.03[1] (15th ed. 1993). "The purpose behind compromises 'is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and

dubious claims.'" *Korngold v. Loyd (In re S. Med. Arts Cos. Inc.)*, 343 B.R. 250, 255 (10th Cir. BAP 2006) (quoting *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986)).

The party seeking approval of a compromise bears the burden of showing "that the proposed settlement is fair, equitable, and in the best interests of the estate." *In re Brutsche*, 500 B.R. at 70. A court's decision to approve a compromise "must be an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989). However, the Court need not engage in a mini-trial addressing the merits of the proposed compromise. *See Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.)*, 382 F.3d 68, 71–72 (1st Cir. 2004) (the responsibility of the bankruptcy judge is to canvass the issues and see whether the settlement is within the range of reasonableness).

In approving a compromise, a court must consider "(1) the probable success of the underlying litigation on the merits, (2) the possible difficulty in collection of a judgment, (3) the complexity and expense of the litigation, and (4) the interests of creditors in deference to their reasonable views." *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997) (citations omitted).

The *Kopexa* factors weigh in favor of the proposed settlement. The Trustee is likely to prevail on the merits against Gonzales. However, it is very difficult to litigate a claim of this size for less than the amount in controversy. If the trustee were forced to pursue Gonzales through judgment and collection, it is highly probable that the litigation costs would exceed any recovery. Viewed in this light, a $4,000 settlement seems very favorable to the estate and is guaranteed to provide a dividend to creditors.

The Court finds that the proposed settlement is fair, equitable, and in the best interest of

the creditors.

### B. Debtors' Attempt to Amend Schedule C After the Case Was Reopened.

1. *A Debtor's Right to Amend in a Reopened Case.* Rule 1009(a) provides:

> A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

It is not clear from the first sentence whether debtors may amend their schedules in reopened cases. Courts addressing the issue have arrived at three answers.

One court has held that the language of Rule 1009(a) prohibits amendments in reopened cases. *See In re Bartlett*, 326 B.R. 436, 439 (Bankr. N.D. Ind. 2005) ("If the drafters had wanted to allow amendments 'at any time,' 'at any time the case is open,' or 'unless the case is closed,' they would have said so. Instead, they chose 'at any time before the case is closed.'"). *See also In re Clear,* 1992 WL 1359570, at *2 (Bankr. N.D. Ind. 1992) (same); *In re Coverstone,* 2006 WL 2136032 (Bankr. N.D. Ind. 2006) (same). This view seems unduly restrictive. While the "before the case is closed" clause should be given effect, it seems more reasonable to interpret the first sentence of Rule 1009(a) as allowing debtors to amend "as a matter of course" only until the case is closed, rather than as prohibiting all amendments in a reopened case.

A second view is that the first sentence of Rule 1009(a) applies equally in open and reopened cases, so a debtor's right to amend, permissive in the first instance, is just as permissive in a reopened case. *See Goswami v. MTC Distrib. (In re Goswami)*, 304 B.R. 386, 393 (9th Cir. BAP 2003) (for filing amendments, there is no difference between an open case and a reopened case, citing *Towers v. Boyd (In re Boyd)*, 243 B.R. 756, 766 (N.D Cal. 2000)); *In re Mathis,* 2007 WL 954756, at *1 (Bankr. E.D. Tenn. 2007) (following *Goswami*). This interpretation ignores

-5-
Case 13-11237-t7    Doc 48    Filed 12/24/14    Entered 12/24/14 10:48:38 Page 5 of 10

the "before the case is closed" clause (i.e., the result would be the same if the clause were deleted), and therefore is unsatisfactory if a reasonable interpretation is available that gives effect to the clause.

The third view is that a debtor's ability to amend as a matter of right ends at case closure, but that a court may allow an amendment in a reopened case if the debtor can show excusable neglect. *See Moretti v. Bergeron (In re Moretti)*, 260 B.R. 602, 608 (1st Cir. BAP 2001) (debtor's request to amend schedules in reopened cases is governed by Rule 9006(b)(1), rather than Rule 1009(a), so the debtor must show that her failure to amend before case closure was due to excusable neglect). *See also In re Schmidtke,* 513 B.R. 579, 585 (Bankr. D. Colo. 2014) (stating in dicta that the court preferred this interpretation of Rule 1009(a)); *In re Paulette,* 493 B.R. 729, 733-34 (Bankr. D. Md. 2013) (adopting this view); *In re Wilmoth,* 412 B.R. 791, 796-97 (Bankr. E.D. Va. 2009) (same).

This Court believes that this third, middle ground approach best harmonizes the Code and Rules. The Code is silent on amendments to a debtor's bankruptcy schedules. Without the Rules, a motion to amend would be governed by § 105(a) and left to the sound discretion of the bankruptcy court. The first sentence of Rule 1007(a) provides guidance about amendments before a case is closed, and gives debtors the nearly unfettered right to amend and re-amend their schedules. The Rule does not address amendments in reopened cases, so the Court must look to another Rule or fall back on § 105(a).

As Judge Brown points out in *Schmidtke*, Rule 1009(a) can reasonably be read to impose a deadline of case closure for debtors to amend their schedules. *Schmidtke,* 513 B.R. at 585, citing Rule 1009(a). This interpretation is logical; when cases are ready for closure the estates will have been fully administered, all claims will have been dealt with, and debtors will be in a

position to obtain their "fresh start."  All bankruptcy schedules and statements should be in their final form at that time.

Because Rule 1009(a) requires debtors to complete all schedule amendments before case closure, amendments in reopened cases are allowed only pursuant to Rule 9006(b)(1):

> when an act is required or allowed to be done at or within a specified period by these rules . . . the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Here, the "specified period" is the case closing date of July 22, 2013.  Debtors' amended Schedule C was filed exactly a year later.  The late filing must be disallowed unless Debtor can show excusable neglect.

2. *Excusable Neglect*.  The Court makes a two-part inquiry to determine whether excusable neglect exists.  *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380 (1993).  First, the Court must examine whether Debtors' failure to take action timely was the result of neglect.  *Id.* at 388.  If so, the Court must decide whether the neglect was excusable.  *Id.* at 394-95.  The latter determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Id.* at 395.  Factors to consider include: "[1]the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  *Biodiversity Conservation Alliance v. Bureau of Land Management,* 438 Fed. Appx. 669, at *2 (10th Cir. 2011) (citing *Pioneer)*.  These factors do not necessarily carry equal weight; the reason for the delay, and in particular whether the movant was at fault, typically is the most important factor.  *See U.S. v. Torres,* 372 F.3d 1159, 1163 (10th Cir. 2004) ("[F]ault in the delay remains a very important factor-perhaps the most

important single factor-in determining whether neglect is excusable.") (internal quotations omitted).

Here, the Court finds that Debtors' failure to claim an exemption for their rights under the recording contract was neglect. There is no question that the recording contract should have been disclosed. Had Debtors done so, Debtors could have asserted the exemption timely, and all parties would have been saved considerable time and expense.

Second, the Court finds that Debtors' neglect was not excusable. Of the four *Pioneer* factors outlined above, three weigh against Debtors (prejudice to creditors, the length of the delay, and whether the delay was within the control of Debtors). The fourth factor, good faith, is neutral. The Court does not find that Debtors subjectively intended to deceive the Trustee or creditors, but they were sophisticated enough to know that all assets must be disclosed. Further, when the trustee asked if they had any right to sue anybody, they should have disclosed the dispute, especially since they sued only three weeks later. Based on the evidence in the record, the Court finds that the good faith issue is a close call. Good faith or no, however, any fault for failing to exempt the Gonzales contract/claim timely lies with Debtors.

Debtors' failure to claim the exemption before case closure was not due to excusable neglect. The Court therefore will sustain the trustee's Exemption Objection.[5]

---

[5] In the past courts have conditioned a debtor's right to amend her schedules on good faith. *See e.g.*, *In re Ford*, 492 F.3d 1148, 1155 (10th Cir. 2007) (amendment may be denied if there is bad faith); *In re Calder,* 973 F.2d 862, 867 (10th Cir. 1992) ("An amendment may be denied, however, if there is bad faith by the debtor or prejudice to creditors."); *In re Yonikus*, 996 F.2d 866, 872 (7th Cir. 1993) (recognizing bad faith exception to permissive amendment under Rule 1009(a)). The "bad faith" exception recognized in these cases has been overruled by *Law v. Siegel*, 134 S. Ct. 1188 (2014). Thus, there is no "good faith" gloss on a debtor's right to amend, in either an open or a reopened case.

C. <u>Debtors' Claimed Exemptions and New Mexico Law</u>.

Debtors seek to exempt the Gonzales claim under N.M.S.A. § 42-10-10. This statute grants New Mexico residents "who [do] not own a homestead" an additional $5,000 exemption "in lieu of the homestead exemption." N.M.S.A. § 42-10-10(A).

Debtors own a homestead, and in fact seek to exempt $29,704.29 of equity in their house under N.M.S.A. §42-10-9. Debtors therefore cannot use the "in lieu of homestead" exemption. Unlike the federal "wild card" exemption (§ 522(d)(5)), which allows a debtor to exempt certain *unused* homestead exemption amounts, New Mexico's homestead and in-lieu-of homestead exemptions are mutually exclusive. The Debtors' claimed exemption in the Gonzales claim therefore cannot be allowed.[6]

### III. CONCLUSION

The trustee's settlement with Gonzales is fair and reasonable, and will be approved. The Debtor's amendment of their exemption schedule will not be allowed because Debtors' failure to assert the exemption before the case was closed was not due to excusable neglect. Finally, the Debtors may not claim both a New Mexico homestead exemption and an exemption in lieu of homestead.

The Settlement Motion will be granted and the Exemption Objection sustained. Separate orders will be entered.

---

[6] In the Exemption Objection the trustee also objects to Debtor's use of the "in-lieu-of homestead" exemption to exempt other personal property, i.e., a checking account, federal and state tax refunds, and cash on hand. The Court will sustain these objections for the reasons set forth above.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 24, 2014

Copies to:

Edward J. Smith
6912 Tampico Rd.
Rio Rancho, NM 87144

Tonya G. Smith
6912 Tampico Rd.
Rio Rancho, NM 87144

Jacqueline Ortiz
320 Gold Ave SW, Ste. 300A
Albuquerque, NM 87102

Edward A. Mazel
320 Gold Ave. SW, Ste. 300A
Albuquerque, NM 87102